IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-293-FL

| | |
|---|---|
| DOROTHY L. HARDY, )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-11, DE-15] pursuant to Fed. R. Civ. P. 12(c). Claimant Dorothy L. Hardy ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on 21 March 2005, alleging disability beginning 10 February 1999. (R. 14). Her claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 18 January 2008, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 559-90). On 22 February 2008, the ALJ issued a decision denying

Claimant's request for benefits. (R. 11-26). On 19 May 2010, the Appeals Council denied Claimant's request for review. (R. 3-6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

2

in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility; (2) improper assessment of Claimant's residual functional capacity ("RFC"); and (3) improper reliance on VE testimony.[1] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 4-5, 6.

---

[1] The court identifies and discusses the alleged assignments of error pursuant to the sequential evaluation process and not as presented by Claimant.

3

# FACTUAL HISTORY

## I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 16). Next, the ALJ determined Claimant had the following severe impairments: history of carpal tunnel syndrome, history of ganglion cysts, a history of tenosynovitis and a mood disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant had moderate restriction in activities of daily living, moderate difficulties in social functioning and with concentration, persistence or pace and no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[2] with manipulative and mental restrictions. (R. 18). Specifically, the ALJ found Claimant could frequently but not constantly perform tasks requiring pushing and/or

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); Soc. Sec. Ruling ("S.S.R.") 96-9p, 1996 SSR LEXIS 6, at *8, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 SSR LEXIS 6, at *8-9, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

pulling of hand controls and reaching, handling, and fingering with both hands. *Id.* The ALJ further found that Claimant could understand and remember simple instructions and maintain sufficient concentration, persistence, and pace to perform simple, routine, repetitive tasks, occasionally interact with coworkers, supervisors, and members of the public and adapt to routine changes in the job setting. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 22).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 46 years old and unemployed. (R. 566, 571, 575). Claimant is a high school graduate. (R. 566). Claimant's past work experience was primarily assembly line work. (R. 567).

Claimant testified that her ability to work is impacted by a work-related injury to her right arm in 1999, for which she has undergone two surgical procedures (carpal tunnel surgery and ganglion cyst surgery), post traumatic stress disorder ("PTSD"), depression and low back pain. (R. 567, 569, 582). Claimant attended physical therapy regarding her arm for three years and has received numerous injections in her forearm over the course of her treatment, the last one occurring in 2006. (R. 568-69). Claimant was referred to a pain clinic by her family doctor but was unable to afford the treatment. (R. 568).

5

Claimant testified that her doctor imposed work limitations with respect to her right hand, which is Claimant's dominant hand. (R. 570). Claimant's use of her right hand generally causes increased pain and thus she relies heavily on her left arm. (R. 571). Claimant testified that her doctor advised that no further action could be taken with respect to her right arm and that Claimant must cope with the pain, swelling, tingling and aching in her arm. (R. 571). Claimant testified to engaging in a seven year full time job search (up to 2007) with the assistance of professional vocational counselors. (R. 575-76).

Claimant attributed her depression to her work injury, but explained she cannot afford treatment. (R. 569). Claimant stated that as a result of her depression, she lacks energy, gets anxious easily, becomes irritated around crowds and prefers to be alone, lacks concentration and is forgetful. (R. 577-78). Claimant testified also that prior to 1999, Claimant had sought psychiatric treatment for abuse by her husband, the loss of a child and her brother's suicide which Claimant witnessed. (R. 574-75). Claimant was advised to seek treatment for her PTSD; however, Claimant cannot afford it. (R. 582).

Claimant takes Arthotec, Vicodin and Tylenol Arthritis for her arm pain. (R. 569). Claimant takes Cymbalta for her depression and testified that due to her lack of health insurance, a treating physician provides Claimant samples thereof. (R. 569, 574). Claimant testified to experiencing numerous side effects from her medications, including drowsiness and thirst. (R. 579-80). Claimant testified further to having Stevens-Johnson Syndrome, a disorder causing her skin to breakout in blisters. (R. 579).

Claimant naps one to two times a day for up to three hours, which she attributed to her medication. (R. 572, 580). Claimant testified that she only gets two to four hours of sleep at night

because of pain. (R. 573). Claimant testified further that on some days, she stays in bed all day. (R. 579). Claimant explained that as a result of her right arm impairment, she has difficulty doing her hair, brushing her teeth, buttoning clothes, tying her shoes and putting on and taking off jewelry. (R. 571-72). Accordingly, Claimant keeps her hair short, uses a battery-operated toothbrush, wears pull-up pants and relies on her girlfriend's assistance when she wishes to wear jewelry. (R. 572). As a result of low back pain, Claimant experiences difficulty with repetitive bending and stooping, cannot walk for "a long period of time," can only sit or stand for up to forty minutes and has to elevate her legs to relieve the pain. (R. 582-83). Claimant described her housework as "limited." (R. 572). Claimant rarely shops for groceries and does not cook. (R. 573). Claimant testified that she does not drive "a lot" because of medication side effects. (R. 580).

### III. Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engler testified as a VE at the administrative hearing. (R. 584-89). After the VE's testimony regarding Claimant's past work experience (R. 585), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed three hypothetical questions. First, the ALJ asked the VE whether the individual could perform Claimant's past work assuming the individual had the physical capacity to lift and carry ten pounds occasionally and five pounds frequently, stand and/or walk and sit for a total of about six hours in an eight-hour workday, perform frequent, but not constant, pushing and pulling of hand controls and perform frequent, but not constant, reaching, handling and fingering and the mental capacity to understand and remember simple instructions, maintain sufficient concentration, persistence, and pace to perform simple, routine and repetitive tasks, interact occasionally with supervisors, co-workers, and members of the public, and adapt to routine changes in the job setting. (R. 586).

7

The VE responded in the negative but explained the individual could perform the following representative sedentary positions: (1) surveillance system monitor (DOT #379.367-010), (2) final assembler (DOT #713.687-018) and (3) table worker (DOT# 739.687-182). (R. 587).

Second, the ALJ asked the VE whether an individual could perform Claimant's past work or other jobs in the economy whose physical capacity was consistent with Claimant's testimony – that is, an ability to perform less than occasional reaching, handling, and fingering, interact less than occasionally with supervisors, co-workers, and members of the public, an inability to use her dominant arm for lifting and carrying, the need for frequent, unscheduled breaks during a workday and work absences exceeding three times per month. (R. 587). The VE responded in the negative. *Id.* The VE stated that there were no conflicts between her testimony and information contained in the Dictionary of Occupational Titles. (R. 587-88).

## DISCUSSION

### I. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 5. Specifically, Claimant contends some of the reasons the ALJ provided in discounting Claimant's credibility were factually incorrect and argues further that the ALJ limited his consideration to objective medical factors only. Pl.'s Mem. at 8. This court disagrees.

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other

8

Case 5:10-cv-00293-FL   Document 18   Filed 06/27/11   Page 8 of 20

symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, he "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ considered Claimant's numerous subjective complaints, including right arm pain, tingling and swelling, weakness of her right upper extremity, back pain, an inability to focus, a loss of energy, anxiety, drowsiness and irritability. (R. 19, 22). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 22). In reaching this conclusion, the ALJ reasoned as follows: (1) Claimant's history of carpal tunnel syndrome, ganglion cysts and tenosynovitis were corrected by surgery (R. 257-58, 305-06); (2) physical examinations and diagnostic testing did not reveal ongoing inflammation or neurological deficits (R. 134, 135,

9

136, 138, 187, 329, 333, 460); (3) lack of aggressive measures for relief such as the application of TENS equipment or enrollment in a pain management program; (4) the lack of evidence of a change in motor tone or bulk or other change in body habitus or constitutional appearance (R. 134, 137, 460) "which might be expected in a person whose activities are markedly restricted due to a debilitating disease process;" (5) Claimant's lack of cooperation in performing functional capacity evaluations ("FCE") in November 2001 (R. 353-90) and January 2005[3] (R. 339-52); (6) no mental health abnormalities noted and no diagnosis of PTSD appearing in treatment records prior to 31 December 2004, Claimant's date last insured ("DLI"); and (7) Claimant's failure to pursue a November 2005 referral to a psychiatrist. (R. 22).

Plaintiff contends first that, contrary to the ALJ's finding that post-surgical clinical and laboratory findings were essentially normal, a May 2003 EMG "showed continued right carpal tunnel syndrome" (R. 329) and in progress notes from November 2001 (R. 197) and February 2003 (R. 189), Joel D. Krakauer, M.D., Claimant's surgeon, noted swelling. Pl.'s Mem. at 8. While these treatment records indeed indicate swelling and right carpel tunnel syndrome, they do not support Claimant's argument that the ALJ's characterization of her diagnostic examinations or surgeries is "incorrect." In discussing the May 2003 EMG, the ALJ specifically acknowledged that while the EMG was normal, it "showed mild carpal tunnel syndrome." (R. 20, 329). The ALJ observed also that Claimant visited Dr. Krakauer on numerous occasions, including 13 November 2001 and 25 February 2003. (R. 20, 189, 197). While these records indicate that Claimant suffered from "[m]ild swelling" and "[v]ery mild swelling," they do not contradict the ALJ's observation that Claimant's

---

[3] The FCE is dated 3 January 2004; however, the study later indicates it was performed on 3 January 2005. (R. 229).

medical records revealed no evidence of "*ongoing* inflammation." (R. 22) (emphasis added). Review of the ALJ's opinion reveals that the ALJ properly considered and summarized the objective medical evidence.

Claimant contends further that the ALJ focused solely on objective medical evidence and "never considered the other factors" set forth in 20 C.F.R. § 404.1529(c)(3) as referenced above. Pl.'s Mem. at 8; *see* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *18, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, Claimant notes that she "had a very steady work history without large gaps in employment" and "was consistent in her reports of the intensity and location of her symptoms." Pl.'s Mem. at 8. Despite Claimant's contentions to the contrary, the ALJ discussed the following: (1) Claimant's limited daily activities; (2) Claimant's arm and back pain and depressive symptoms, (3) activities that aggravate her symptoms, including repetitive use of her right hand, lifting heavy items, being around numerous people and walking for a long period of time; (4) Claimant's use of steroid injections and numerous medications for her arm pain, as well as Claimant's testimony regarding side effects attributed to her medications; (5) Claimant's use of a heating pad to relieve her arm pain and her need to elevate her legs to relieve her back pain. (R. 19-20). The ALJ, in discussing the objective evidence, also noted documentation of Claimant's "persistent symptoms" post-surgery. (R. 20, 135, 194, 186-86, 196-97). Thus, Claimant essentially contends the ALJ improperly weighed the evidence before him. However, this court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to sit *de novo* as the adjudicator. *See Mastro*, 270 F.3d at 176.

11

Lastly, Claimant contends the ALJ improperly relied on the fact that Claimant was never enrolled in a pain management program, stating "[s]he could not afford the treatment by this type of specialist." Pl.'s Mem. at 8. Claimant essentially argues that the ALJ improperly penalized Claimant for failing to seek treatment that she could not afford. "Trials of a variety of treatment modalities . . . generally lend support to an individual's allegations of intense and persistence symptoms." SSR 96-7p, 1996 SSR LEXIS 4, at *21, 1996 WL 374186, at *7. However, the ALJ must not draw any inferences from the lack of such treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain . . . failure to seek [alternative] treatment." *Id.*, 1996 SSR LEXIS 4, at *22, 1996 WL 374186, at *7. The inability to afford medical treatment is a sufficient reason for infrequent medical visits. S.S.R. 96-7p, 1996 SSR LEXIS 4, at *23, 1996 WL 374186, at *8; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified by lack of funds).

Here, Claimant provided no summary of the medical records and does not cite any evidence indicating her difficulty in obtaining medical assistance due to financial constraints. Upon the court's review of the record, it can find no evidence that a physician referred Claimant to a pain management program or any evidence substantiating Claimant's claim that she declined participation in such a program due to financial limitations. *Cf. Lovejoy*, 790 F.2d at 1117 (finding claimant's "testimony that she simply could not afford further treatment is uncontradicted on the record"); *Lovelace v. Bowen*, 813 F.2d 55, 57 (5th Cir. 1987) (claimant's treating physician noted claimant was financially unable to buy medication); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) (claimant's treating

physician noted claimant had "dire financial troubles"). Over the course of the relevant time period, Claimant received medical treatment on a consistent basis from Claimant's treating physicians, Dr. Krakauer (R. 184-226) and Clifford Wheeless, III, M.D. (133-40). *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (explaining no error by ALJ in finding claimant not credible despite claim of inability to afford medical treatment where claimant was found to have access to medical attention and little difficulty in obtaining medication); *see also Wooten v. Shalala*, 998 F.2d 1012 (table), 1993 U.S. App. LEXIS 18071, at *10, 1993 WL 269267, at *4 (4th Cir. Jul. 16, 1993) (explaining the ALJ did not penalize claimant for the alleged inability to afford medication where it was not clear from the record that claimant could not afford medical treatment). Accordingly, the ALJ properly considered the treatment Claimant sought and received in determining the weight to accord Claimant's allegations of pain. *See id.*

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d

at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

**II.     The ALJ's RFC is supported by substantial evidence.**

Claimant contends the ALJ's RFC is not supported by substantial evidence. Pl.'s Mem. at 4. Specifically, Claimant contends the ALJ's determination that Claimant can frequently perform handling and fingering is inconsistent with the opinion of a treating physician. *Id.* at 5.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *6, 1996 WL 374184, at *5. The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7.

The ALJ's decision indicates that he considered all relevant evidence before determining Claimant maintained the ability to perform sedentary work with manipulative and mental restrictions. As discussed above, the ALJ's opinion provides a detailed review of Claimant's medical records, and Claimant does not dispute this fact. Rather, Claimant contends only that the ALJ's finding that Claimant can perform <u>frequent fingering</u> with both hands is not supported by substantial evidence. In support of this contention, Claimant relies on a November 2001 progress note wherein Dr. Krakauer stated that Claimant's work restrictions include "avoid[ing] repetitive motion with the wrist and hands" and a February 2005 opinion wherein Dr. Krakauer acknowledges the permanent

14

work restrictions outlined in the January 2005 FCE and in summarizing those restrictions, states Claimant is capable of "[o]ccasional repetitive hand activities."[4] (R. 184, 197). In discussing Claimant's RFC, the ALJ acknowledged both the 2001 and 2005 opinions of Dr. Krakauer and afforded them "great weight" and "significant weight," accordingly, in light of Dr. Krakauer's ongoing treatment relationship with Claimant and his medical expertise as an orthopaedist. (R. 23). Based on the weight accorded Dr. Krakauer's opinion, Claimant contends the ALJ's finding that Claimant can perform frequent fingering is not supported by substantial evidence.

"Courts typically accord greater weight to the testimony of the treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (internal quotations, citations, and footnote omitted). However though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"). Here, in addition to the opinions of Dr. Krakauer, the ALJ considered other substantial evidence which supports the ALJ's RFC finding that Claimant is capable of performing repetitive hand activities on a frequent basis despite Dr. Krakauer's statement to the contrary.

In particular, the ALJ discussed the results of the FCE performed in 2005 which

---

[4] "Occasionally" means occurring from very little up to one-third of the time while "frequent" means occurring from one-third to two-thirds of the time. S.S.R. 83-10, 1983 SSR LEXIS 30, at *13-14, 1983 WL 31251, at *6.

15

demonstrated Claimant had the ability to handle "[f]requent repetitive activities" despite noting that test results were invalid due to the poor effort set forth by Claimant. (R. 351). Indeed, in reviewing the FCE test results, both the ALJ and Dr. Krakauer noted that the FCE was an invalid study due to Claimant's inconsistent and limited effort. (R. 21, 184, 351). The ALJ also discussed a one-time evaluation performed in September 2005 by Kimberly Barrie, M.D., who noted Claimant had a full range of motion of the fingers, no atrophy of the hand and wrist muscles had no permanent work restrictions. (R. 20, 460-61). The ALJ noted further Dr. Barrie's observation that Claimant exhibited self-limiting behavior and symptom magnification. Based on both Dr. Barrie's findings and the FCE, the ALJ's finding that Claimant was limited to frequent reaching, handling and fingering is supported by substantial evidence.

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

### III. The ALJ properly relied on the testimony of the vocational expert.

Claimant contends the ALJ relied on the testimony of the VE for two reasons. First, Claimant argues that the hypothetical posed to the VE did not adequately reflect Claimant's RFC in that it did not include Claimant's additional limitation of only occasional reaching, handling and fingering. Pl.'s Mem. at 5. Second, Claimant contends the ALJ failed to identify and resolve conflicts between the VE's testimony and the DOT as required in Social Security Ruling 00-4p. *Id.* at 6.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in

the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson*, 434 F.3d at 659 (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record"). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ"); *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible.").

First, Claimant contends the VE's testimony was irrelevant as it was based on a faulty hypothetical. Pl.'s Mem. at 5. Contrary to Claimant's contention, however, the hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's individual physical and mental impairments. (R. 472); *see Walker*, 889 F.2d at 50. While

Claimant contends that the ALJ should have included the limitation that Claimant was limited to occasional – as opposed to frequent – reaching, handling and fingering, the ALJ's determination that Claimant was restricted by only those limitations that are reflected in the hypothetical is supported by substantial evidence. Accordingly, Claimant's argument as to this issue is without merit.

Second, Claimant contends the surveillance system monitor position identified by the VE requires a level of social interaction and a reasoning level exceeding Claimant's RFC. According to the DOT, the surveillance monitor position requires "frequent" talking and a General Educational Development ("GED") reasoning level of 3.[5] *See* U.S. Dept. of Labor, DOT, 1991 WL 673244. As Claimant notes, these requirements arguably conflict with the VE's testimony that an individual limited to occasional interaction with the public and to performing only simple, routine and repetitive tasks could perform the requirements of a surveillance system monitor. *See Yurek v. Astrue*, No. 5:08-CV-500-FL, 2009 U.S. Dist. LEXIS 78922, at *32, 2009 WL 2848859, at *9 (E.D.N.C. Sept. 2, 2009) (holding "the DOT's reasoning level three requirement conflicts with the ALJ's prescribed limitation that [an individual can] perform only simple, routine, repetitive work" and collecting cases). Accordingly, the ALJ's reliance on the system surveillance monitor position was error.

Nonetheless, such error is harmless considering the ALJ relied appropriately upon the VE's testimony regarding the positions of final assembler and table worker, and that Claimant could perform said positions. *See Mickles*, 29 F.3d at 921 (affirming denial of benefits where the ALJ

---

[5] "[GED] embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." U.S. Dept. of Labor, DOT, App. C § III, Dictionary of Occupational Titles 979.687-034 (LexisNexis), 1991 WL 688702 (Fourth Ed. Rev. 1991). The DOT specifies the GED requirements required for each job, including the level of reasoning skills. Reasoning level three requires the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"); *Currie v. Astrue*, No. 7:09-CV-73-BO, 2010 U.S. Dist. LEXIS 87233, at *4 (E.D.N.C. Aug. 21, 2010) (finding the ALJ's failure to inquire about an inconsistency in the record as "harmless error because no substantive inconsistency existed") (citations omitted); *Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at *18, 2007 WL 3070601, *6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)). As the VE identified two jobs existing in significant numbers that Claimant can perform, the VE's testimony thus provided substantial evidence for the ALJ's decision that Claimant can perform alternate work. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying step five under the sequential evaluation analysis). Therefore, the testimony of the VE regarding the final assembler and table worker positions constitutes substantial evidence to support the ALJ's finding that a significant number of jobs exist in the regional economy which Claimant could perform. *See Prunty v. Barnhart*, No. 6:04-CV-00038, 2005 U.S. Dist. LEXIS 16594, at *17, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step-five burden); *see also* S.S.R. 00-4p, 2000 SSR LEXIS 8, at *6, 2000 WL 1898704, at *2 (explaining occupations listed in the DOT are "collective" descriptions of occupations and "[e]ach occupation represents numerous jobs"). Accordingly, the court finds the ALJ's determination that there are significant numbers of jobs available for a person with Claimant's limitations is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-11] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-15] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 27th day of June, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge